AGUSTÍN ROSELLÓ BRAS, demandante y apelante, *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO, demandada y apelada.

No. 4174.—*Visto:* Enero 20, 1928. *Resuelto:* Junio 27, 1928.

*Angel A. Vázquez,* abogado del apelante; *Federico y Mariano Acosta Velarde,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El demandante apela de una sentencia adversa en una acción de daños y perjuicios con motivo de la destrucción de un camión en un choque que tuvo con una locomotora en un cruce del ferrocarril.

La primera proposición sometida por el apelante es que la corte inferior erró al declarar sin lugar una moción para eliminar cierta materia nueva alegada en la contestación como una defensa afirmativa.

La moción se basaba en la teoría de que una alegación afirmativa en cuanto a negligencia contribuyente por parte del demandante admite la negligencia de parte de la demandada alegada en la demanda, y no puede unirse a una negativa general.

"Lo que la demandada dice mediante tal alegación, unida a una negativa general, es que no es culpable de la negligencia imputádale; pero que, si lo es, entonces el demandante, por su propia negligencia, contribuyó al daño ocasionado, y no puede recobrar indemnización por tal motivo." 20 R. C. L. 106, párrafo 92; *Jackson* v. *Natchez, etc., R. Co.*, 114 La. 981.

Entre tales dos defensas, no hay una inconsistencia de hechos absoluta, según se distingue de la mera inconsistencia que surge por implicación de la ley, aun cuando sea puesta a prueba por la regla reconocida por la minoría más conservadora de los Estados que tienen códigos, por la práctica en equidad, y por el criterio moderno sobre los estatutos de Anne. Nota al pie del caso de *Seattle National Bank* v. *Jones*, 48 L.R.A. 177, 182, 185, 188, 203, 210. Véanse además los casos de *Del Rosario et al.* v. *Rosaly*, 27 D.P.R. 105, *Wys* v. *Maldonado*, 34 D.P.R. 189.

Otra contención del apelante es al efecto de que la corte inferior erró al apreciar la prueba, "ya que ésta no es contradictoria en el punto esencial de que la demandada no tenía puestas, en el paso a nivel 'Cruce de Silva' cadena

ni guardabarreras, ni ningún otro medio de protección para los vehículos que pasaban por allí mientras corrían los trenes y locomotoras de la demandada.''

El choque ocurrió cerca de las cuatro de la mañana. A medida que se acercaban al cruce, el camión y el tren caminaban en la misma dirección general. El juez sentenciador, después de examinar el escenario del accidente, manifiesta que la vía del ferrocarril y la carretera porque caminaba el camión eran paralelas, y que el espacio que las separaba no era mayor de cinco metros de ancho a lo largo de una distancia no menor de setecientos metros antes de llegar al cruce. No había nada que impidiera ver desde la vía pública hasta el cruce o antes de llegar a él.

El cruce estaba provisto de portones y cadenas que servían de barreras cuando los trenes pasaban durante el día. Durante la noche se conservaban encendidas linternas rojas. También se usaban letreros conteniendo las admoniciones de rigor. Jamás se habían usado las cadenas durante la noche, y la demandada no hizo esfuerzo alguno para probar que lo estaban siendo al tiempo del accidente, o en cualquier otra hora entre la puesta y la salida del sol antes de la fecha del accidente.

La corte inferior llegó a la conclusión de que las linternas rojas estaban colocadas en su sitio y alumbrando al tiempo de ocurrir el accidente; que los coches para pasajeros estaban bien alumbrados y que el foco delantero iluminaba la vía hasta una distancia de doscientos metros por lo menos, a medida que el tren se dirigía al cruce; que el camión venía excesivamente cargado y conducía unos seis u ocho pasajeros, además del *chauffeur;* que inmediatamente después del suceso se encontraron en el sitio en que el mismo ocurrió una guitarra rota y los fragmentos de una botella conteniendo licor; que el conductor del camión y varios de sus compañeros habían estado ingiriendo debidas embriagantes; que se sonó el silbato y se tocó la campana a una dis-

tancia prudencial antes de llegar el tren al cruce; que los que viajaban en el camión iban cantando al compás de la guitarra mientras el vehículo se acercaba al cruce; que el tren en cuestión era uno de los regulares de pasajeros, que marchaba de acuerdo con un itinerario fijo, caminando a la velocidad reglamentaria y acostumbrada; que el conductor del camión había pasado con frecuencia por el cruce, y sabía no sólo que no se usaban cadenas durante la noche, si que también que el tren debía pasar a la hora en que ocurrió el accidente; que dicho conductor no se paró, ni miró, ni oyó, ni redujo la velocidad del camión; y que el menor grado de diligencia por parte del conductor le hubiese advertido de la inminencia del peligro y hubiese evitado el choque.

El artículo 3 de la ley aprobada el 6 de diciembre de 1917, titulada "Ley definiendo las compañías de servicio público y proveyendo lo necesario para su reglamentación; prescribiendo, definiendo, reglamentando y limitando sus derechos, facultades y deberes; prescribiendo y definiendo las facultades y deberes de la Comisión de Servicio Público y los de sus funcionarios; prescribiendo y reglamentando la práctica y el procedimiento ante dicha comisión y en apelación, y para otros fines," (Leyes de 1917, página 433), lee en parte como sigue:

"Artículo 3.—Será deber de toda compañía de servicio público:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(q) *Aparatos de seguridad en cruces, etc.*—Si se tratare de una compañía de ferrocarril, ésta deberá construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares y en los demás cruces públicos que la Comisión designare, y con sujeción a las reglas, reglamentos y órdenes de la Comisión, deberá cercar o de otra manera adecuada guardar o proteger sus vías, en aquellos sitios que la Comisión designare, de modo que los animales no puedan entrar en ella; deberá instalar en sus locomotoras campanas y silbatos que deberán usarse al acercarse a curvas, túneles y a los cruces de caminos o calles y siempre que fuere necesario como advertencia de la aproximación de dichas locomotoras y trenes los que

reducirán la velocidad al mínimum en los cruces de las calles; y deberá usar, después de la puesta del sol, las luces que sean necesarias y que la Comisión determine.''

El mero hecho de que la demandada dejara de cumplir estrictamente con las disposiciones de ese precepto legislativo no puede excusar una negligencia contribuyente tan crasa como la imputada al conductor del camión en cuestión por el juez sentenciador en el presente caso. 22 R.C.L. página 1042, párrafo 275.

La falta de conflicto en la prueba en cuanto al hecho de que las cadenas no estaban colocadas al tiempo del accidente, no basta, por tanto, para subvertir una sentencia basada en conclusiones de hecho de la naturaleza bosquejada anteriormente.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Sr. Texidor no intervino.